## UNITED STATES DISTRICT COURT
## SOUTHER DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

TRAVIS VARBLE, on behalf of himself   )
and others similarly situated,   )
        )    Case No. 3:19-cv-00247-NJR-GCS
      Plaintiff,   )
v.   )
      )
MIDWEST WATER & CONCRETE,   )
INC., et al.,   )
      )
      Defendants.   )

### PLAINTIFF'S CONSENT MOTION FOR (1) CERTIFICATION OF A COLLECTIVE AND CLASS ACTION FOR SETTLEMENT PURPOSES, (2) APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, (3) PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT, (4) APPROVAL OF NOTICE TO PUTATIVE CLAIMANTS, AND (5) SCHEDULING A HEARING FOR FINAL APPROVAL OF THE PARTIES' CLASS ACTION SETTLEMENT AGREEMENT, <u>AND MEMORANDUM IN SUPPORT</u>

Plaintiff Travis Varble, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendants Midwest Water & Concrete, Inc. ("MW&C"), William S. Jones and Karen S. Jones, through their attorneys, moves the Court for (1) certification of a Fair Labor Standards Act ("FLSA") collective action and an Illinois class action for settlement purposes; (2) approval of the parties' collective action settlement, (3) preliminary approval of the parties' class action settlement agreement; (4) approval of notice to the putative claimants; and (5) scheduling a hearing for final approval of the parties' class action settlement agreement.

A copy of the parties' executed Settlement and Release Agreement ("Settlement Agreement") is attached as "Exhibit 1." The proposed notice of class action settlement and claim form are attached as "Exhibit 2" and "Exhibit 3," respectively. The declaration of Plaintiff's attorney, Mark Potashnick, in support of this motion and brief is attached as "Exhibit 4." Plaintiff incorporates

the following Memorandum in Support.  The parties have reached a settlement on behalf of all class members.  The settlement meets the standards for approval of an FLSA settlement and for granting preliminary approval of a class action settlement.

### Facts and Procedural History

Plaintiff Varble alleges that he and other laborers employed by MW&C (collectively "the Laborers") are not paid overtime wages for work performed in excess of 40 hours per week under MW&C's standard pay policies.

MW&C owns and operates a basement waterproofing and concrete repair business based in Brighton, Illinois.  MW&C employs Laborers to perform that work.

Plaintiff Varble was employed by MW&C as a Laborer from about June 2013 to about Fall 2013, from about April 2016 to about Fall 2016, and again from about September 2018 to January 1019.

On February 28, 2019, Mr. Varble filed suit against Defendants alleging overtime pay violations under the FLSA and the overtime provisions of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, and misclassification under Illinois' Employee Classification Act ("ECA"), 820 ILCS § 185/1, *et seq.*  He asserted those claims on behalf of himself and similarly situated Laborers currently and formerly employed by Defendants within the applicable statutes of limitations.

Mr. Varble alleged that Defendants typically required the Laborers to report to MW&C's facility in Brighton, Illinois at the beginning of each work day to load tools, materials and supplies into MW&C's work vehicles, then travel in those vehicles to the first jobsite of the day.  He further alleged that the Laborers travel back to MW&C's facility in Brighton, Illinois at the end of each workday, where they unload and store tools, materials and supplies.

Mr. Varble alleges that Defendants have maintained a policy and practice of paying their Laborers straight time wages for travel between MW&C's Brighton, Illinois facility and jobsites, rather than paying them overtime pay for that travel, even when they work a total of more than 40 hours per week.

Defendants adamantly deny these allegations.

Plaintiff promptly decided not to further pursue claims for misclassifying the Laborers upon his receipt of further information from Defendants.

In response to discovery requests, Defendants produced thorough time and pay records from which Plaintiff's counsel calculated damages.  Based on those calculations, and through arm's length negotiations, the parties were able to achieve a settlement.  Ex. 4, Declaration of Mark Potashnick, at ¶ 10 (hereinafter "Potashnick Decl."); Ex. 5, Declaration of Jack Daugherty (hereinafter "Daugherty Decl."), at ¶ 7

The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests.  Potashnick Decl., ¶¶ 2-7; Daugherty Decl., at ¶¶ 3-4; Ex. 6, Declaration of Phil Hamilton (hereinafter "Hamilton Decl."), at ¶¶ 2-6.

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving various vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals.  Potashnick Decl. ¶ 9; Daugherty Decl., ¶¶ 5-6; Hamilton Decl., ¶¶ 7-10.

### Key Settlement Terms

The parties have executed a Settlement Agreement and Release of Claims (Ex. 1).  In sum, they agreed to settle all putative class members' wage and hour claims by Defendants paying:

1.      $46,000.00 to the class as damages, based on a notice and claims process,

2.      $ 2,000.00 to the named Plaintiff as a service award,

3.      $39,705.00 to Plaintiff's counsel as attorney's fees, and

4.      $ 491.78 to Plaintiff's counsel for out-of-pocket litigation costs.

Ex. 1, § 2.1(A).

The portion of the settlement proceeds payable to the class will be distributed to class members

who submit claims based on the following equitable formula:

> (1)      For each Class member, the total number of weeks employed by MW&C since February 28, 2016 shall be his or her "Individual Workweeks."
>
> (2)      The aggregate of all Individual Workweeks among all Class members shall be the "Class Workweeks."
>
> (3)      Each Class member's Individual Workweeks shall be divided by the Class Workweeks to obtain his or her "Payment Ratio."
>
> (4)      Each Class member's Payment Ratio shall be multiplied by the amount of $46,000.00 to calculate his or her Individual Settlement Payment.
>
> (5)      Each Class member's Individual Settlement Payment will be at least $50.00.

*Id.*, § 2.1(B).

Half of each class member's Individual Settlement Payment claimed shall be classified as

wages, subjected to payroll and income taxes, and reported on an IRS Form W-2 and the other half

each class member's Individual Settlement Payment claimed shall be classified as liquidated

damages and shall be reported on an IRS Form 1099. *Id.*, § 2.2(A).

The release binding class members who do not opt out is limited to wage and hour claims:

> Each Class member releases all claims accrued through November 22, 2019 that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C.§ 201, et. seq., and state wage and hour laws, whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage or overtime pay laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all

4

claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties.

*Id.*, § 3.1(A).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Varble seeks a modest service award of $2,000.00. *Id.,* ¶ 2.1(A)(2).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to their lodestar of $39,705.00 accrued through October 1, 2019 plus costs.  No fees and costs are sought for work performed since that date.  *Id.,* ¶¶ 2.1(A)(2) & (3); Potashnick Decl., ¶¶ 14-16; Daugherty Decl., ¶¶ 10-13.

A notice of collective action settlement (the "Notice") and claim form ("Claim Form") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval of this settlement, the Notice and the Claim Form.  Exs. 2 & 3.  The Notice explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each Laborer's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

<b>Argument</b>

## I.  Class / Collective Action Certification

"Before turning to the substance of the Settlement Agreement, the Court must certify the class for settlement purposes."  *Wright v. Nationstar Mortg. LLC,* 2016 U.S. Dist. LEXIS 115729, *10-11 (N.D. Ill. Aug. 29, 2016) (citing Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."); Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs ... .")).

To obtain class certification, the proponent of class certification must show the elements required under Fed. R. Civ. P. 23. Subsection (a) of Rule 23(a) requires:

> (1) the members of the class are so numerous that separate joinder of each member is impracticable ["*numerosity*'];
>
> (2) there are questions of law or fact common to the class ["*commonality*"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["*typicality*"]; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class ["*adequacy of representation*"].

In addition to Rule 23(a), the party seeking class certification must satisfy one of the alternative requirements of Rule 23(b). In this case, the pertinent requirement is found in subsection (b)(3), which provides that "…the questions of law or fact common to class members predominate over any questions affecting only individual members ["*predominance*"], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ["*superiority*"]." *Id.*

### Rule 23(a)(1): Numerosity

Plaintiff's claims satisfy the "numerosity" requirement of Rule 23(a)(1), as the class consists of approximately 47 current and former Laborers. Thus, the class is so numerous that separate joinder of each member is impracticable. *See, e.g., Sinclair v. PGA, Inc.,* 2018 U.S. Dist. LEXIS 185184, *9 (W.D. Wis. Oct. 30, 2018) (recognizing a "rule of thumb adopted in most courts . . . that proposed classes in excess of 40 generally satisfy the numerosity requirement.") (citing 1 Joseph M. McLaughlin, McLaughlin on Class Actions § 4:5 (8th ed. 2011) (collecting cases)); *Wilson v. City of Evanston,* 2017 U.S. Dist. LEXIS 139248, *17-18 (N.D. Ill. Aug. 30, 2017) ("Forty or more members is a general rule of thumb for determining numerosity").

### Rule 23(a)(2): Commonality

The "commonality" test requires at least one question of law or fact common to each class member. *Wal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2556 (2011)) ("even a single common question will do."). "Rule 23(a)(2) does not demand that every class member have an identical claim. To satisfy the commonality requirement, a court need only find a single common question of law or fact." *Carlson v. Northrop Grumman Corp.,* 2019 U.S. Dist. LEXIS 177027, *7 (N.D. Ill. Oct. 11, 2019) (citing *Spano v. Boeing Co.,* 633 F.3d 574, 585 (7th Cir. 2011)); *see also Dvorak v. St. Clair Cnty.,* 2018 U.S. Dist. LEXIS 10585, *12 (S.D. Ill. Jan. 23, 2018) (same). The commonality test has been characterized as a "'low hurdle' that is 'easily surmounted[.]'" *Flynn v. FCA US LLC,* 327 F.R.D. 206, 222 (S.D. Ill. Jul. 5, 2018).

Plaintiff's claims easily satisfy the "commonality" requirement because all class members held the same job, performed the same primary job duty of concrete repair and basement waterproofing, were compensated by similar hourly pay rates, typically traveled between MW&C's facility and job sites twice per day, and were subject to Defendants' policy and practice of paying straight time wages for that travel.

Plaintiff maintains that a common legal theory holds that employees may recover overtime wages for total work time in excess of 40 hours per week, when part of that time is spent traveling to and from worksites. *Pizano v. Big Top & Party Rentals, LLC,* 2017 U.S. Dist. LEXIS 56118, *3-7 (N.D. Ill. Apr. 12, 2017) (explaining law and regulations applicable to travel within workday); 29 C.F.R. § 785.38 ("Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice. If an employee normally finishes his work on the premises at 5 p.m. and is sent to another job which he finishes at 8 p.m. and is required to return

to his employer's premises arriving at 9 p.m., all of the time is working time."); *see also, e.g., Herman v. Rich Kramer Const.*, 1998 U.S. App. LEXIS 23329, *4-7 (8th Cir. Sept. 21, 1998) (time spent reporting to shop and traveling from shop to first job site of day is compensable); *Hernandez v. NJK Contractors, Inc.,* 2015 U.S. Dist. LEXIS 57568, *77-78 (E.D.N.Y. May 1, 2015) (holding commutes compensable where "plaintiffs each spent approximately thirty minutes at the Shop in the morning and thirty minutes at the Shop in the evening."); *Hajny v. Best Roofing of N.J., Inc.,* 2011 U.S. Dist. LEXIS 67763, *6-8 (S.D.N.Y. Jun. 22, 2011) (holding commutes compensable where plaintiffs received instructions and loaded tools at a waystation); *Gonzalez v. Bustleton Servs.,* 2010 U.S. Dist. LEXIS 23158, *46 (E.D. Pa. Mar. 5, 2010) (holding commutes compensable where plaintiffs began the work day with ten minutes of truck loading and finished the day by taking debris to the dump).

Thus, the answer to one common question will drive resolution of every class members' claim: did Defendants pay only straight time when the Laborers worked more than 40 hours per week including travel time. *Id.* Identification of that central question dispositive of each class member's claim easily satisfies the "commonality" requirement. *Wal-Mart Stores,* 131 S.Ct. at 2556.

Defendants do not agree with Plaintiff's assessment but do not oppose class certification *for settlement purposes only.*

### Rule 23(a)(3): Typicality

Typicality is satisfied when the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.,* 580 F.3d 485, 492 (7th Cir. 2009); *Charvat v. Valente,* 2019 U.S. Dist. LEXIS 187225, *10 (N.D. Ill. Oct. 28, 2019) (same).

Here, the claims of the named Plaintiff and the class arise from the same course of conduct, specifically Defendants' policy and practice of paying only straight time for weeks in which Laborers worked more than 40 hours including travel time. Moreover, all such claims are based on the same legal theory: travel during the course of a workday is compensable, just like any other work activity. *Pizano,* 2017 U.S. Dist. LEXIS 56118, at *3-7; 29 C.F.R. § 785.38.

### Rule 23(a)(4): Adequacy of Representation

Plaintiff's claims satisfy the "adequacy" requirement of Rule 23(a)(4) because his attorney is a veteran class and collective action litigator, particularly in wage and hour claims. *Charvat,* 2019 U.S. Dist. LEXIS 187225, at *10 (adequacy requirement is met by "showing that (1) class counsel is qualified, experienced, and capable of conducting the litigation and (2) the named plaintiff's interests are not antagonistic to other class members"); Potashnick Decl., ¶¶ *****. Indeed, Plaintiff Varble sought to champion the class members' rights by seeking out counsel, providing counsel with information about the claims, filing class and collective claims and advocating for the interest of all  Defendants' Laborers in the parties' settlement negotiations.

### Rule 23(b)(3): Predominance and Superiority

In addition, Plaintiff's claims satisfy Rule 23(b)(3), in that questions of law or fact common to the claim or defense of the representative party and the claim or defense of each member of the class predominate over any question of law or fact affecting only individual members of the class. Again, the predominant question for *every* class member is whether travel time between MW&C's facility and worksites constitutes compensable worktime for the purpose of determining overtime pay entitlement. *Pizano,* 2017 U.S. Dist. LEXIS 56118, at *3-7; 29 C.F.R. § 785.38. The answer to that common question easily eclipses any differences between class members that an employer can identify. *Id.*

Finally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  There is no evidence that any class member desires to control his or her own claim, and any class member desiring that control may opt-out of the parties' settlement. Counsel for the parties are unaware of any other pending litigation against Defendants entailing the same claim.  For purposes of settlement, the class is manageable, it can easily be identified from Defendants' own records, a class action will foster judicial economy by avoiding duplicative litigation, and a class action will ensure that class members who are otherwise unaware that they possess a claim, or are unable to hire an attorney, will have their rights represented.

Defendants do not agree with Plaintiff's assessment but do not oppose class certification *for settlement purposes only.*

### B.  Certification of the FLSA Collective Action

District courts in this Circuit recognize three factors considered in ultimately certifying an FLSA collective action: "(1) whether the plaintiffs share similar or disparate factual and employment settings; (2) whether the various affirmative defenses available to the defendant would have to individually applied to each plaintiff; and (3) fairness and procedural concerns." *Kurgan v. Chiro One Wellness Ctrs.,* 2014 U.S. Dist. LEXIS 20255, *8 (N.D. Ill. Feb. 19, 2014).

As to similar employment settings, all class members held the same job, performed the same primary job duties of concrete repair and basement waterproofing, were compensated by similar hourly pay rates, typically traveled between MW&C's facility and job sites twice per day, and were subject to Defendants' same policy and practice of paying straight time wages for travel regardless of whether they worked a total of more than 40 hours per week.

Further, Defendants' primary defenses apply equally to all class members, such as Defendants' arguments regarding lack of a requirement to report to MW&C's facility at the beginning of

workdays (ECF Doc. # 28, at 2, ¶ 2(a)), lack of pre-travel duties (*id.*, ¶ 2(b)), lack of post-travel duties (*id.*, ¶ 2(d)), lack of a duty to pay the Laborers for travel (*id.*, ¶ 2(f)), and lack of compensable work performed during travel (*id.*, ¶ 2(g)).

Due to these similarities, fairness and procedural questions warrant collective treatment.

## II.    Approval of the Settlement

"District court review of a class action settlement proposal is a two-step process." *Woods v. Club Cabaret, Inc.,* 2017 U.S. Dist. LEXIS 198896, *14 (C.D. Ill. May 17, 2017).

> The Seventh Circuit explained:
>
> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval. This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998); *see also, e.g., Robinson v. Carolina First Bank NA,* 2019 U.S. Dist. LEXIS 26450, *21 (D.S.C. Feb. 14, 2019) (the purpose of preliminary approval is merely to determine that the proposed settlement agreement is "sufficiently within the range of reasonableness.") (citing cases).

To determine whether a proposed class action settlement agreement is fair and reasonable, the Seventh Circuit directs its district courts to consider "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-64

(7th Cir. 2014) (citing cases). "'The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1132 n.44 (7th Cir. 1979)).

To be approved, and FLSA settlement must constitute "a fair and reasonable resolution of a *bona fide* dispute." *Fouche v. Preferred Pediatric Home Health Care, Inc.,* 2017 U.S. Dist. LEXIS 198887, *2-3 (S.D. Ill. Dec. 4, 2017) (quoting *Lynn Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1355 (11th Cir. 1982)). "When reviewing a FLSA settlement, a court normally considers the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Id.*, 2017 U.S. Dist. LEXIS 198887, at *3 (citing *Burkholder v. City of Ft. Wayne,* 750 F.Supp.2d 990, 995 (N.D. Ind. 2010)).

Unlike a Rule 23 settlement, FLSA settlements may be approved in a one-step process, and no final fairness hearing is required. *See, e.g., Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, *7 (N.D. Ind. Jan. 4, 2019) (citing cases); *Bainter v. Akram Invs., LLC,* 2018 U.S. Dist. LEXIS 177445, *5 (N.D. Ill. Oct. 9, 2018) (collecting cases).

When determining whether the settlement adequately compensates the plaintiffs, "the Court may not substitute its own judgment for that of the parties." *U.S. v. PolyOne Corp.,* 2014 U.S. Dist. LEXIS 83317, *13 (C.D. Ill. Jun. 19, 2014) (citing *U.S. v. Cannons Eng'g. Corp.,* 899 F.2d 79, 84 (1st Cir. 1990)); *see also, e.g., In re Big Horn Land & Cattle Co, LLC,* 2011 U.S. Dist.

LEXIS 18327, *19 (N.D. Ind. Feb. 23, 2011) ("The court must only review the issues 'to see if the settlement falls below the lowest point of reasonableness," and not substitute its own judgment…") (citing *In re Martin*, 212 B.R. 316, 319 (8th Cir. 1997)). "'A strong presumption of fairness attaches to a settlement agreement when it is the result of … [arm's length] negotiation.'" *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 210368, *14 (S.D. Ill. Dec. 13, 2018) (quoting *Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 410 (E.D. Wis. 2002)).

### Preliminary Approval of the Illinois Class Settlement[1]

#### Factor 1:  Strength of the Case for Plaintiffs on the Merits, Balanced Against the Extent of Settlement Offer

Plaintiff's counsel believe that the claims are supported by substantial evidence and soundly based on the law, but ultimately those claims depend upon persuading a jury to adopt Plaintiff's evidence over Defendants' competing evidence and arguments.  Such disputes will likely include extensive "he said, she said" arguments over whether Defendants required the Laborers to report to MW&C's facility at the beginning of workdays and whether the Laborers actually performed compensable pre-travel duties and / or post-travel duties.  Indeed, "it is virtually impossible to predict with certainty which testimony would be credited….".  *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986).  Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all.  Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation.

---

[1] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.*, 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

The settlement provides each class member with the chance to obtain meaningful relief relative to the value of his or her individual claim. The average recovery, after the service award, fees, litigation costs and administrative costs is projected to be $978.72 ($46,000.00 available for claims / 47 class members = $978.72 average recovery per Plaintiff), with a range of $50.00 to $6,709.24, based on Defendants' contemporaneously-created work time and pay records. Thus, the settlement provides the Laborers meaningful relief now, rather than the mere possibility of recovery at some unknown time in the future. Moreover, this is a classic compromise as the recovery equates to more than the Defendants' calculation of damages, but less than Plaintiff's calculation.

From another quantitative perspective, Plaintiff's counsel calculated $48,405.44 maximum actual damages suffered by the class. Thus, Plaintiff has recovered 95% of class-wide actual damages ($46,000.00 / $48,405.44 = 95%). Such recovery falls well within the range of comparable settlement approved around the nation in wage and hour claims. *See, e.g., Prince v. Perfect Delivery, Inc.,* Case No. 8:17-cv-01950-BHH (D.S.C.), ECF Doc. 45-2, at 15-16 ("Plaintiff recovered the actual damages calculated by his counsel based on a reasonable reimbursement rate of $.45 per mile.") & ECF Doc. 62 (approving settlement); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14, 2017) (settlement equal to 2/3rds of actual damages based on $.45 per mile); *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

**Factor 2: The Complexity, Length, and Expense of Further Litigation**

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015). This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for about five years prior to settlement. Potashnick Decl., ¶ 15. As explained above, this litigation involved complex and novel issues. This litigation would be time intensive as it would entail multiple battles of competing evidence. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

### Factors 3 & 4: The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement

Plaintiff and his counsel are not aware of any class member who intends to oppose the settlement. *See, e.g., Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). Moreover, counsel's experience indicates the unlikeliness of opposition to the settlement. In scores of wage and hour class and collective action settlements around the nation by Plaintiff's counsel on behalf of tens of thousands of total class members, only one class member has objected to settlement. However, he withdrew that objection prior to a final approval hearing. Still, these factors can be further addressed after notice to the class and opportunity to object.

### Factor 5: The Opinion of Competent Counsel

Plaintiff's counsel has recommended this settlement without hesitation as in the best interests of the class members. That recommendation is based on his substantial experience in class litigation and litigation of numerous wage and hour claims. Therefore, this factor weighs strongly

in favor of approval.  *See Gribble v. Cool Transports Inc.,* 2008 U.S. Dist. LEXIS 115560, *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### Factor 6:  Stage of the Proceedings and the Amount of Discovery Completed

Although this claim settled relatively early, Defendant had provided answers to written discovery and had produced thorough and voluminous work time and pay documents. That data was utilized to both evaluate liability and calculate various damage scenarios.  Due to good faith sharing of information and perspective, the parties were able to focus their settlement efforts. Thus, both sides understood the relevant evidence and possible outcomes prior to settlement, and efficiently achieve settlement without additional involvement by this Court.  Such achievement warrants settlement approval.

### Approval of the FLSA Settlement

#### Factor 1:  Complexity, Expense, and Likely Duration of the Litigation

Addressed above.

#### Factor 2:  Stage of the Proceeding and Amount of Discovery Completed

Addressed above.

#### Factors 3 & 4:  Risks of Establishing Liability and Damages

Addressed above.

#### Factor 5:  Ability of the Defendants to Withstand a Larger Judgment

As part of settlement negotiations, defense counsel informed Plaintiff's attorney that his clients operate a relatively small family business and they cannot afford to pay the upper end of possible judgments.  Thus, this factor favors settlement approval.

#### Factors 6 & 7:  Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Risks of Litigation

Prior to negotiations, Plaintiff's counsel calculated maximum possible damages of about $170,000.00, which included full liquidated damages pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b), full statutory damages and interest pursuant to 820 ILCS 105/12(a), plus attorney's fees and costs incurred through the date of the first settlement demand. Plaintiffs recovered a total of $88,196.78 (subject to a claim process), or about 52% of their best possible outcome through that time. That result is certainly fair and reasonable, especially considering the risk of further litigation (discussed above) and Defendants' purported financial status. *See, e.g., Prince, Jimenez, Selk, Jones, Knight.*, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

### Additional Factor: *Bona Fide* Dispute

Here, Plaintiff alleged that travel time was not paid at overtime rates, even when Laborers worked a total of more than 40 hours in a week. Defendants deny Plaintiff's substantive allegations, assert that Plaintiff was paid in accordance with federal and Illinois law, and assert various defenses to Plaintiff's claims. Thus, the claims were actually in dispute.

## III.    Attorney's Fees and Costs Provided in the Settlement are Appropriate

The FLSA and IMWL both provide fee-shifting to prevailing plaintiffs. 29 U.S.C. § 216(b); 820 ILCS 105/12(a). Fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work").

The Settlement Agreement provides Plaintiff's counsel their lodestar through October 1, 2019, the date of the first settlement demand. Plaintiffs will present a more thorough fee and cost application prior to the final fairness hearing, but Plaintiffs state that Plaintiff's counsel's fees were calculated at their usual billing rates, which have been approved by district courts around the

nation.  *See, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (awarding Mark Potashnick $500.00 in FLSA and IMWL claim); *Heuberger,* 2019 U.S. Dist. LEXIS 118174, at *13-14 (awarding Mark Potashnick $450.00); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (same); *Hackett,* 259 F.Supp.3d at 367-69 & n.2 (same); *Bodon v. Domino's Pizza, LLC,* 2015 U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. Jun. 4, 2015) (same).

Notably, Plaintiff's counsel will not seek their fees and costs incurred in documenting the settlement, seeking preliminary and final settlement approval, communicating with class members regarding the settlement, and distributing settlement funds.

## IV.     Plaintiff Varble Deserves a Service Award

"Incentive awards are justified when necessary to induce individuals to become named representatives."  *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Bickel v. Sheriff of Whitley Cnty.,* 2015 U.S. Dist. LEXIS 38311, *18-19 (N.D. Ind. Mar. 26, 2015).  The modest $2,000.00 incentive award sought for Mr. Varble should be approved in recognition of his initiative, effort and risk, which benefitted all other Laborers.

Mr. Varble substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. He was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiffs' counsel. Mr. Varble sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls and email communications with counsel. He also participated actively in negotiations.  Therein, Mr. Varble advocated for *all* of the Laborers. There is no question that the other Laborers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been

achieved. Potashnick Decl., ¶ 15; Daugherty Decl., ¶ 9.  In light of these efforts, payment of a $2,000.00 service award is amply justified. Defendant does not oppose the requested service award. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

## V.    The Court Should Approve the Proposed Collective Action Class Notice

To approve a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Here, the notice of settlement attached as "Exhibit 2" and the claim form attached as "Exhibit 3" will be mailed to class members at their last known addresses, complying with the highest level of notice recognized by law.

The Notice explains in clear terms (1) the nature of the settlement and the claims released, (2) the minimum amount each class member has been allocated, and (3) the opportunity to include or exclude oneself or object to the settlement.  The Notice informs class members of the terms and provisions of the settlement agreement; the relief the settlement will provide; the need to submit a claim form in exchange for enhanced recovery; the scope of the releases; the date, time and place of the final approval hearing; and the procedures and deadlines for submitting comments or objections. Additionally, the proposed class notice advises class members of the amount of fees and costs that Plaintiff's counsel seek and the amount of the proposed service award to be paid to the named Plaintiff who substantially aided in the prosecution of the case. The proposed class notice is accurate and fully informs class members of the material terms of the settlement and their rights pertaining to it. The Court should approve the proposed form and method of class notice of first-class mail to each class member's last-known address.

## Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a)  certifies a class action for purposes of settlement;

(b)  certifies an FLSA collective action for purposes of settlement;

(c)  preliminarily finds that the parties' settlement of the Illinois class claims appears to be fair, reasonable, and adequate as to members of the collective action class, subject to any objections that may be raised at the final fairness hearing and final approval of the collective action class settlement by this Court;

(d)  finds that the parties' settlement of the FLSA claim appears to be fair, reasonable, and adequate as to members of the collective action class,

(e)  grants preliminary approval of the Illinois class action settlement;

(f)  grants approval of the FLSA collective action settlement;

(f)  approves as to form and content the parties' proposed notice and claim form as reasonable notice practicable under the circumstances and in full compliance with applicable law;

(g)  orders that each class member be given a full opportunity to file a claim, object to, or opt-out of the Settlement Agreement, and to participate at the final approval hearing;

(h)  schedules a final fairness hearing; and

(i)  awards such further relief as the Court deems equitable and just.

Respectfully submitted,

**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

and

Jack R. Daugherty (#6229106)
**Short and Daugherty P.C.**
325 Market St.
Alton, IL 62002
Phone: 618-462-9160
Fax: 618-462-9167
Email: jack@siltrial.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.


*/s/ Mark Potashnick*