UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| TRAVIS VARBLE, on behalf of himself and others similar situated,  )<br>)<br>)<br>  Plaintiff,  )<br>v.  )<br>)<br>MIDWEST WATER & CONCRETE, )<br>INC., et al.,  )<br>)<br>  Defendants.  ) | Case No. 3:19-cv-00247-NJR-GCS |

**PLAINTIFF'S CONSENT MOTION FOR (1) FINAL APPROVAL OF A CLASS ACTION SETTLEMENT, (2) APPROVAL OF A COLLECTIVE ACTION SETTLEMENT, AND (3) DISMISSAL OF THE CLAIMS WITH <u>PREJUDICE, AND MEMORANDUM IN SUPPORT</u>**

Plaintiff Travis Varble, on behalf of himself and all others similarly situated, through his attorneys, with the consent of Defendants Midwest Water & Concrete, Inc. ("MW&C"), William S. Jones and Karen S. Jones, through their attorneys, moves the Court for (1) final approval of an Illinois class action settlement, (2) approval of an FLSA collective action settlement, and (3) dismissal of the claims with prejudice.

A copy of the parties' executed Settlement and Release Agreement ("Settlement Agreement") is attached as "Exhibit 1." The declarations of Plaintiff's attorneys, Mark Potashnick and Jack Daugherty, in support of this motion and brief are attached as "Exhibit 2" and "Exhibit 3," respectively. The declaration of defense counsel, Phil Hamilton, is attached hereto as "Exhibit 4." Plaintiff incorporates the following Memorandum in Support. The parties have reached a settlement on behalf of all class members. The settlement meets the standards for approval of an FLSA settlement and for granting final approval of a class action settlement.

**Facts and Procedural History**

Plaintiff Varble alleges that he and other laborers employed by MW&C (collectively "the Laborers") are not paid overtime wages for work performed in excess of 40 hours per week under MW&C's standard pay policies.

MW&C owns and operates a basement waterproofing and concrete repair business based in Brighton, Illinois. MW&C employs Laborers to perform that work.

Plaintiff Varble was employed by MW&C as a Laborer from about June 2013 to about Fall 2013, from about April 2016 to about Fall 2016, and again from about September 2018 to January 2019.

On February 28, 2019, Mr. Varble filed suit against Defendants alleging overtime pay violations under the FLSA and the overtime provisions of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1, *et seq.*, and misclassification under Illinois' Employee Classification Act ("ECA"), 820 ILCS § 185/1, *et seq.* He asserted those claims on behalf of himself and similarly situated Laborers currently and formerly employed by Defendants within the applicable statutes of limitations.

Mr. Varble alleged that Defendants typically required the Laborers to report to MW&C's facility in Brighton, Illinois at the beginning of each work day to load tools, materials and supplies into MW&C's work vehicles, then travel in those vehicles to the first jobsite of the day. He further alleged that the Laborers travel back to MW&C's facility in Brighton, Illinois at the end of each workday, where they unload and store tools, materials and supplies.

Mr. Varble alleged that Defendants have maintained a policy and practice of paying their Laborers straight time wages for travel between MW&C's Brighton, Illinois facility and jobsites,

rather than paying them overtime pay for that travel, even when they work a total of more than 40 hours per week.

Defendants deny that the Laborers were required to report to the company warehouse, unless they wished to ride to the job site in a company owned vehicle. Defendants allege that the Laborers are free to travel or commute in their own vehicles to the job site. Defendants allege that they pay regular wages for travel/commute time, and that the Laborers are not rendering any services.

Plaintiff promptly decided not to further pursue claims for misclassifying the Laborers upon his receipt of additional information from Defendants.

In response to discovery requests, Defendants produced thorough time and pay records from which Plaintiff's counsel calculated damages. Based on those calculations, and through arm's-length negotiations, the parties were able to achieve a settlement.

The attorneys who negotiated on behalf of the parties are experienced litigators, and they vigorously represented their clients' respective interests. Ex. 2, Declaration of Mark Potashnick, at ¶¶ 1-7 (hereinafter "Potashnick Decl."); Ex. 4, Declaration of Phil Hamilton (hereinafter "Hamilton Decl."), at ¶¶ 8-12. [Mark, do you already have this?]

The settlement reached in this litigation constitutes a fair and reasonable compromise of a *bona fide* dispute involving various vigorously-disputed legal and factual issues. It considers the possible value of the claims balanced against the risk, effort, expense and delay of further litigation and possible appeals. Potashnick Decl. ¶ 9; Hamilton Decl., ¶ 5.

## Key Settlement Terms

The parties have executed a Settlement Agreement and Release of Claims (Ex. 1). In sum, they agreed to settle all putative class members' wage and hour claims by Defendants paying:

1. $46,000.00 to the class as damages, based on a notice and claims process,

3

      2.      $ 2,000.00 to the named Plaintiff as a service award,

      3.      $39,705.00 to Plaintiff's counsel as attorney's fees, and

      4.      $   491.78 to Plaintiff's counsel for out-of-pocket litigation costs.

Ex. 1, § 2.1(A).

The portion of the settlement proceeds payable to the class will be distributed to class members who timely submit claims based on the following equitable formula:

    (1)    For each Class member, the total number of weeks employed by MW&C since February 28, 2016, shall be his or her "Individual Workweeks."

    (2)    The aggregate of all Individual Workweeks among all Class members shall be the "Class Workweeks."

    (3)    Each Class member's Individual Workweeks shall be divided by the Class Workweeks to obtain his or her "Payment Ratio."

    (4)    Each Class member's Payment Ratio shall be multiplied by the amount of $46,000.00 to calculate his or her Individual Settlement Payment.

    (5)    Each Class member's Individual Settlement Payment will be at least $50.00.

*Id.*, § 2.1(B).

Half of each class member's Individual Settlement Payment claimed shall be classified as wages, subjected to payroll and income taxes, and reported on an IRS Form W-2 and the other half each class member's Individual Settlement Payment claimed shall be classified as liquidated damages and shall be reported on an IRS Form 1099. *Id.*, § 2.2(A).

The Settlement Agreement and Release of Claims is subject to court approval. If for any reason the court does not approve the settlement, then the case is not settled and the parties are free to litigate. If the court finally approves the settlement, the settlement shall bind all members of the Class who have not excluded themselves from the Class. The Notice of Settlement, and the terms stated therein, are incorporated and are a part of the agreement.

The release binding class members who do not opt out is limited to wage and hour claims:

> Each Class member releases all claims accrued through November 22, 2019 that were or could have been made against the Released Parties in this Litigation, or similar wage-based claims based on the same facts alleged in the Complaint, including all claims under the Fair Labor Standards Act, 29 U.S.C.§ 201, et. seq., and state wage and hour laws, whether known or unknown, including but not limited to any and all claims arising out of any federal or state wage or minimum wage or overtime pay laws; any and all claims for breach of contract; any and all claims for unpaid or underpaid employee expense reimbursement; any and all claims for unjust enrichment; and any and all derivative claims relating to unpaid wages or minimum wage compensation against the Released Parties.

*Id.*, § 3.1(B).

Based on his service to the class in initiating this case and working with counsel to investigate and prosecute this litigation, named Plaintiff Varble seeks a modest service award of $2,000.00. *Id.,* ¶ 2.1(A)(2).

Subject to this Court's approval, Plaintiff's Counsel will receive fees and litigation costs equal to their lodestar of $39,705.00 accrued through October 1, 2019. No fees and costs are sought for work performed since that date.

The Court-approved notice of class and collective action settlement (the "Notice") and claim form ("Claim Form") were mailed to all class members on December 23, 2019. The Notice explained in clear terms (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each Laborer's right to submit a claim form, object to the settlement, or exclude themselves from the settlement.

After dissemination of that that notice, a total of 16 out of 52 class members timely filed claims (31%), a total of $38,232.73 out of $46,000.00 available to the class was claimed (83%), no class member objected to any term of the settlement, and no class member opted-out of the settlement.

**Argument**

I. **Approval of the Settlement**

"District court review of a class action settlement proposal is a two-step process." *Woods v. Club Cabaret, Inc.,* 2017 U.S. Dist. LEXIS 198896, *14 (C.D. Ill. May 17, 2017).

The Seventh Circuit explained:

> The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval. This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. If the district court finds a settlement proposal within the range of possible approval, it then proceeds to the second step in the review process, the fairness hearing. Class members are notified of the proposed settlement and of the fairness hearing at which they and all interested parties have an opportunity to be heard.

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee,* 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas,* 134 F.3d 873 (7th Cir. 1998).

The Court previously preliminarily approved the parties' settlement (ECF Doc. # 38), notice was disseminated, and claims were filed. No objects or opt-out notices were submitted. Thus, this litigation is now at the final approval stage.

To determine whether a proposed class action settlement agreement is fair and reasonable, the Seventh Circuit directs its district courts to consider "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 863-64 (7th Cir. 2014) (citing cases). "'The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106,

1132 n.44 (7th Cir. 1979)).

To be approved, and FLSA settlement must constitute "a fair and reasonable resolution of a *bona fide* dispute." *Fouche v. Preferred Pediatric Home Health Care, Inc.,* 2017 U.S. Dist. LEXIS 198887, *2-3 (S.D. Ill. Dec. 4, 2017) (quoting *Lynn Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1355 (11th Cir. 1982)). "When reviewing a FLSA settlement, a court normally considers the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Id.*, 2017 U.S. Dist. LEXIS 198887, at *3 (citing *Burkholder v. City of Ft. Wayne,* 750 F.Supp.2d 990, 995 (N.D. Ind. 2010)).

Unlike a Rule 23 settlement, FLSA settlements may be approved in a one-step process, and no final fairness hearing is required. *See, e.g., Heuberger v. Smith,* 2019 U.S. Dist. LEXIS 118174, *7 (N.D. Ind. Jan. 4, 2019) (citing cases); *Bainter v. Akram Invs., LLC,* 2018 U.S. Dist. LEXIS 177445, *5 (N.D. Ill. Oct. 9, 2018) (collecting cases).

When determining whether the settlement adequately compensates the plaintiffs, "the Court may not substitute its own judgment for that of the parties." *U.S. v. PolyOne Corp.,* 2014 U.S. Dist. LEXIS 83317, *13 (C.D. Ill. Jun. 19, 2014) (citing *U.S. v. Cannons Eng'g. Corp.,* 899 F.2d 79, 84 (1st Cir. 1990)); *see also, e.g., In re Big Horn Land & Cattle Co, LLC,* 2011 U.S. Dist. LEXIS 18327, *19 (N.D. Ind. Feb. 23, 2011) ("The court must only review the issues 'to see if the settlement falls below the lowest point of reasonableness," and not substitute its own judgment…") (citing *In re Martin,* 212 B.R. 316, 319 (8th Cir. 1997)). "'A strong presumption of fairness

7

attaches to a settlement agreement when it is the result of … [arm's length] negotiation.'" *Hale v. State Farm Mut. Auto. Ins. Co.,* 2018 U.S. Dist. LEXIS 210368, *14 (S.D. Ill. Dec. 13, 2018) (quoting *Great Neck Capital Appreciation Inv. P'ship., L.P. v. PricewaterhouseCoopers, L.L.P.,* 212 F.R.D. 400, 410 (E.D. Wis. 2002)).

### Final Approval of the Illinois Class Settlement[1]

#### Factor 1: Strength of the Case for Plaintiffs on the Merits, Balanced Against the Extent of Settlement Offer

Plaintiff's counsel believe that the claims are supported by substantial evidence and soundly based on the law, but ultimately those claims depend upon persuading a jury to adopt Plaintiff's evidence over Defendants' competing evidence and arguments. Such disputes will likely include extensive "he said, she said" arguments over whether Defendants required the Laborers to report to MW&C's facility at the beginning of workdays and whether the Laborers actually performed compensable pre-travel duties and / or post-travel duties. Indeed, "it is virtually impossible to predict with certainty which testimony would be credited….". *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) *aff'd,* 798 F.2d 35 (2d Cir. 1986). Consequently, it is possible the class members would recover less than the damages they allege, or no damages at all. Plaintiff and his counsel necessarily, and properly, weighed the risk of proceeding with an assured recovery obtained through negotiation.

The settlement provides each class member with the chance to obtain meaningful relief relative to the value of his or her individual claim. The average recovery, after the service award, fees, litigation costs and administrative costs was $884.62 ($46,000.00 available for claims / 52 class

---

[1] Some courts hold that "[b]ecause 'the standard for approval of an FLSA settlement is lower than for a Rule 23 settlement,' satisfaction of the *Grinnell* [approval] factor analysis will, necessarily, satisfy the standards of approval of the FLSA settlement." *Ramos v. Nikodemo Op. Corp.,* 2017 U.S. Dist. LEXIS 216246, *14-15 & 20 (E.D.N.Y. Aug. 7, 2017) (quoting and citing cases).

members = $884.62 average recovery per Plaintiff), with a range of $50.00 to $7,036.37, based on Defendants' contemporaneously-created work time and pay records.  Thus, the settlement provides the Laborers meaningful relief now, rather than the mere possibility of recovery at some unknown time in the future.  Moreover, this is a classic compromise as the recovery equates to more than the Defendants' calculation of damages, but less than Plaintiff's calculation.

From another quantitative perspective, Plaintiff's counsel calculated $48,405.44 maximum actual damages suffered by the class.  Thus, Plaintiff has recovered 95% of class-wide actual damages ($46,000.00 / $48,405.44 = 95%). Such recovery falls well within the range of comparable settlement approved around the nation in wage and hour claims.  *See, e.g., Prince v. Perfect Delivery, Inc.,* Case No. 8:17-cv-01950-BHH (D.S.C.), ECF Doc. 45-2, at 15-16 ("Plaintiff recovered the actual damages calculated by his counsel based on a reasonable reimbursement rate of $.45 per mile.") & ECF Doc. 62 (approving settlement); *Jimenez v. Pizzerias, LLC,* 2017 U.S. Dist. LEXIS 129820, *10-11 (S.D. Fla. Aug. 14, 2017) (settlement equal to 2/3rds of actual damages based on $.45 per mile); *Selk v. Pioneers Memorial Healthcare Dist.*, 159 F.Supp.3d 1164, 1172 (S.D. Cal. 2016) (recognizing reasonable ranges of settlement of FLSA claims between 26% and 60%); *Jones v. Agilysis, Inc.,* 2014 U.S. Dist. LEXIS 68562, *9-10 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to constitute a "tangible monetary benefit" for the class members); *Knight v. Red Door Salons, Inc.,* 2009 U.S. Dist. LEXIS 11149, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

### Factor 2:  The Complexity, Length, and Expense of Further Litigation

"Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'" *Marshall v. Nat'l. Football League,* 787 F.3d 502, 512 (8th Cir. 2015).  This case is no exception. Notably, Plaintiff's counsel has litigated similar claims for about five years prior to settlement.

Potashnick Decl., ¶ 15. As explained above, this litigation involved complex and novel issues. This litigation would be time intensive as it would entail multiple battles of competing evidence. By reaching a favorable settlement now, the parties have avoided the need to resolve significant and time-consuming motions and discovery issues and the resources a jury trial would have entailed. In addition, reducing the class trial to a judgment and the eventual appeal would likely involve complex and time-consuming issues. Making substantial monetary relief available now, without significant additional time, effort, or risk, should weigh heavily in favor of approval.

### Factors 3 & 4: The Amount of Opposition to the Settlement and the Reaction of Members of the Class to the Settlement

After dissemination of that that notice, a total of 16 out of 52 class members timely filed claims (31%), a total of $38,232.73 out of $46,000.00 available to the class was claimed (83%), no class member objected to any term of the settlement, and no class member opted-out of the settlement. *See, e.g., Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455 (E.D. Pa. 2008) (finding that the absence of any objections weighed in favor of approving a class action settlement). These results show overwhelming approval by the class.

### Factor 5: The Opinion of Competent Counsel

Plaintiff's counsel has recommended this settlement without hesitation as in the best interests of the class members. That recommendation is based on his substantial experience in class litigation and litigation of numerous wage and hour claims. Therefore, this factor weighs strongly in favor of approval. *See Gribble v. Cool Transports Inc.,* 2008 U.S. Dist. LEXIS 115560, *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

**Factor 6:  Stage of the Proceedings and the Amount of Discovery Completed**

Although this claim settled relatively early, Defendant had provided answers to written discovery and had produced thorough and voluminous work time and pay documents. That data was utilized to both evaluate liability and calculate various damage scenarios.  Due to good faith sharing of information and perspective, the parties were able to focus their settlement efforts. Thus, both sides understood the relevant evidence and possible outcomes prior to settlement, and efficiently achieve settlement without additional involvement by this Court.  Such achievement warrants settlement approval.

### Approval of the FLSA Settlement

**Factor 1:  Complexity, Expense, and Likely Duration of the Litigation**

Addressed above.

**Factor 2:  Stage of the Proceeding and Amount of Discovery Completed**

Addressed above.

**Factors 3 & 4:  Risks of Establishing Liability and Damages**

Addressed above.

**Factor 5:  Ability of the Defendants to Withstand a Larger Judgment**

As part of settlement negotiations, defense counsel informed Plaintiff's attorney that his clients operate a relatively small family business and they cannot afford to pay the upper end of possible judgments.  The cost of defense alone for class action litigation that will span years is a burden to the Defendant company.  Thus, this factor favors settlement approval.

**Factors 6 & 7:  Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Risks of Litigation**

Prior to negotiations, Plaintiff's counsel calculated maximum possible damages of about $170,000.00, which included full liquidated damages pursuant to § 16(b) of the FLSA, 29 U.S.C.

11

§ 216(b), full statutory damages and interest pursuant to 820 ILCS 105/12(a), plus attorney's fees and costs incurred through the date of the first settlement demand.  Plaintiffs recovered a total of $88,196.78 (subject to a claim process), or about 52% of their best possible outcome through that time.  That result is certainly fair and reasonable, especially considering the risk of further litigation (discussed above) and Defendants' purported financial status.  *See, e.g., Prince, Jimenez, Selk, Jones, Knight.*, *9-10 (N.D. Cal. Feb. 2, 2009) (recovery of 50% of possible damages in a wage and hour action was "substantial achievement on behalf of the class").

### Additional Factor:  *Bona Fide* Dispute

Here, Plaintiff alleged that travel time was not paid at overtime rates, even when Laborers worked a total of more than 40 hours in a week.  Defendants deny Plaintiff's substantive allegations, assert that Plaintiff was paid in accordance with federal and Illinois law, and assert various defenses to Plaintiff's claims.  Thus, the claims were actually in dispute.

## III.   Attorney's Fees and Costs Provided in the Settlement are Appropriate

The FLSA and IMWL both provide fee-shifting to prevailing plaintiffs.  29 U.S.C. § 216(b); 820 ILCS 105/12(a).  Fee awards to counsel further the remedial goals of the FLSA of protecting workers from wage abuses.  *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (FLSA's purpose is to ensure every employee receives "a fair day's pay for a fair day's work").

The Settlement Agreement provides Plaintiff's counsel their lodestar through October 1, 2019, the date of the first settlement demand.  Plaintiffs will present a more thorough fee and cost application prior to the final fairness hearing, but Plaintiffs state that Plaintiff's counsel's fees were calculated at their usual billing rates, which have been approved by district courts around the nation.  *See, e.g., Burton v. DRAS Partners, LLC,* Case No. 19-cv-02949-SJC (N.D. Ill. Nov. 12, 2019) (ECF No. 35) (awarding Mark Potashnick $500.00 in FLSA and IMWL claim); *Heuberger,*

2019 U.S. Dist. LEXIS 118174, at *13-14 (awarding Mark Potashnick $450.00); *Hoffman v. Poulsen Pizza, LLC,* 2017 U.S. Dist. LEXIS 459, *21-22 (D. Kan. Jan. 3, 2017) (same); *Hackett,* 259 F.Supp.3d at 367-69 & n.2 (same); *Bodon v. Domino's Pizza, LLC,* 2015 U.S. Dist. LEXIS 82039, *27-28 (E.D.N.Y. Jun. 4, 2015) (same).

Notably, Plaintiff's counsel will not seek their fees and costs incurred in documenting the settlement, seeking preliminary and final settlement approval, communicating with class members regarding the settlement, and distributing settlement funds.

### IV.     Plaintiff Varble Deserves a Service Award

"Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *Bickel v. Sheriff of Whitley Cnty.,* 2015 U.S. Dist. LEXIS 38311, *18-19 (N.D. Ind. Mar. 26, 2015).  The modest $2,000.00 incentive award sought for Mr. Varble should be approved in recognition of his initiative, effort and risk, which benefitted all other Laborers.

Mr. Varble substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. He was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiffs' counsel. Mr. Varble sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls and email communications with counsel. He also participated actively in negotiations.  Therein, Mr. Varble advocated for *all* of the Laborers. There is no question that the other Laborers have substantially benefited from his actions. Without his efforts, this case would not have been brought and this settlement would not have been achieved. Potashnick Decl., ¶ 15.  In light of these efforts, payment of a $2,000.00 service award is amply justified. Defendant does not oppose the requested service award. *See, e.g., In re Ready-*

*Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

### Conclusion

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and issue an Order that:

(a) approves the parties' settlement of the Illinois class claims as fair, reasonable, and adequate as to members of the class action;

(b) approves the parties' settlement of the FLSA claim as fair, reasonable, and adequate as to members of the collective action class; and

(c) dismisses the claims with prejudice.

Respectfully submitted,

**WEINHAUS & POTASHNICK**
*/s/ Mark Potashnick*
Mark A. Potashnick (Mo. Bar # 41315)
(admitted *pro hac vice*)
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150
Facsimile: (314) 997-9170
markp@wp-attorneys.com

and

Jack R. Daugherty (#6229106)
7184 Horseshoe Bend
Edwardsville, Illinois  62025
Telephone: (618) 606-2990
Email: jackdaugherty2000 @yahoo.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

14

The undersigned hereby certified that a true and correct copy of the foregoing was served on all attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

*/s/ Mark Potashnick*
